BLANCHE A. NITSCHKE *vs.* GEORGE W. SILVIA.

FRANCIS C. NITSCHKE *vs.* SAME.

JUNE 11, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

O'CONNELL, J. These two actions of trespass on the case for negligence, brought by husband and wife, were tried together in the superior court before a justice thereof sitting with a jury and resulted in a verdict for the defendant in each case. Both cases are now before us on the defendant's exceptions to the granting of plaintiffs' motions for new trials, all other exceptions having been waived. Since the basic issues and testimony are identical in both actions, we shall treat them as one case in which Francis C. Nitschke will be referred to as the plaintiff.

The accident out of which these cases arose occurred on the Nooseneck Hill Road approximately 1000 feet north of the West Greenwich-Coventry town line on December 25, 1945, about 7:30 p.m. The plaintiff, accompanied by his wife, was driving an automobile, which was owned by her,

in a southerly direction to their home in Stamford, Connecticut.

The defendant, accompanied by his wife, was driving his automobile in a northerly direction to their home in Fall River, Massachusetts. There is no dispute as to the fact that defendant's car skidded across the highway and that the accident occurred in the southbound or westerly lanes of the four-lane highway. Beyond that the two versions of the accident are in sharp conflict. The only witnesses to the actual occurrence were the plaintiff and his wife and the defendant and his wife. Police Chief William D. Capwell of Coventry arrived shortly after the accident and testified as to the positions of the two cars on the highway and as to the conversation he had with the defendant at the scene.

The plaintiff testified that it was raining and he was using his windshield wipers; that he was traveling at a speed of 35 miles per hour and had no difficulty in driving; that it was a four-lane highway and traffic was fairly light in both directions; that he was driving in the extreme westerly lane going south and that there were no cars ahead of him. As to the defendant's car, he testified: "Well, I first saw a black object in the middle of the road. That was caught by the reflection of my head-lights." He claimed that when he first saw the black object it was about 75 feet away; that this turned out to be the Silvia autombile, which was skidding across the highway; that he first saw it in the middle of the road moving diagonally toward him; and that he applied his brakes immediately and continued straight ahead. He stated that the impact occurred in the westerly lane and that the side of the Silvia car struck the front of his car. He estimated its speed "Not too accurately" at 40 miles per hour.

In cross-examination plaintiff testified that his car slowed down when he applied his foot brake but did not stop before the impact. His recollection was that "the front of my car was against his and of course, I had struck his

middle as his car was perpendicular across the road." He explained that he used the word "perpendicular" as meaning "at right angles to the road." From the time he first saw the black object which turned out to be the Silvia car until the collision was a matter of seconds.

Blanche A. Nitschke, plaintiff's wife, testified that it had been raining and had then turned into a drizzle; that they were in the westerly lane; that her husband was driving at a speed of 35 miles per hour; and that she was looking out of the side window when he applied the brakes. She stated that she then looked ahead and saw the Silvia car "directly in front of us"; that it was "a short distance away, facing the opposite side of the road"; that it was in the westerly lane and moving northerly; and that the car was so close she knew there would be a collision and she then fainted.

Antonnette F. Silvia, defendant's wife, testified that an icy condition had existed fifteen or twenty minutes before the accident and that her husband mentioned this fact to her, saying it was "getting pretty bad." She said the car skidded and started turning around; that it came to a stop in the two westerly lanes of the highway; that her husband turned off the ignition and blinked his lights; that a truck answered the signal with its lights and passed around them; and that the Nitschke car then hit their car. In cross-examination she stated that her husband told her he would take it easy when it became slippery on the road, which was level at the point where the car began to skid; that she thought the car was going about 25 miles per hour when it skidded in what she described as a "slow motion" turning of the car; and that after they came to a stop the truck went by and her husband did not start the car again.

The defendant testified substantially as follows: That as they came into Rhode Island from Connecticut it was raining and a glare ice was forming on the highway; that he had been driving 25 to 30 miles per hour and had slowed

down to 25 miles just before the accident; that he was driving straight along a level highway when his car skidded suddenly and without warning, turned around twice, and came to rest across the two westerly lanes at a 45 degree angle and pointed toward Providence; that his headlights were on and he kept blinking them during the skid and after he stopped; that after his car came to rest, a southbound truck answered his signal with its lights and passed around him, as did also a southbound passenger car which was following the truck; that he thought the Nitschke car also was going around him, but instead it ran into the left side of his car, which had remained motionless on the highway from the time it stopped until the impact; and that he did not move his car because of the oncoming southerly traffic which he could see.

In cross-examination he testified that two of his tires were brand new and two others had gone only about 50 miles; that it was raining at the time of the accident and freezing on the highway; that he had not skidded before or had any other difficulty; that as to the skid the rear slid off to the left and the car turned around twice; that he turned off his engine while turning around in the skid and his car came to rest at a 45 degree angle, headed northeast; that he blinked his lights from high to low beam with the floor button; that a truck which he had first seen about 200 yards "down the road" went around him while he was stopped, as did also a passenger car which had been following the truck; and that his car was then struck by the Nitschke car. He said that he spoke to William D. Capwell, chief of police of the town of Coventry, and told him that he had skidded; that a truck and a passenger car had passed him; and stated he did not remember whether he told him that his car was motionless at the time of the impact.

No other witnesses testified concerning the accident, but Chief Capwell testified briefly as to the position of the car thereafter and as to some conversation he had with

the defendant at the scene. It appears, therefore, that the evidence was clearly conflicting. The plaintiff testified that the defendant struck his car while the latter's car was moving and in a skid. On the other hand, the defendant testified that his car skidded suddenly on the icy roadway and that after the skid and after a truck and a passenger car had turned out and passed him, the plaintiff's car, which was following the truck and the other passenger car at a considerable distance, struck his car while it was motionless. The trial justice instructed the jury upon the law as to skidding and no exception was taken to such charge.

Upon all the evidence and instructions as to the law applicable thereto, the jury returned a verdict for the defendant. The trial justice granted a motion for a new trial. We have examined his rescript carefully and find therein certain statements and conclusions which are wholly unsupported by the evidence. He stated: "The defendant told the chief that his car skidded into the plaintiff's car"; and later that "He admitted to Chief Capwell that his car skidded into the plaintiff's car." The evidence wholly negatives these assertions. Chief Capwell went from his home upon receipt of a telephone call. He said Silvia told him that his car went into a skid. Then he was asked: "And what else, if anything?" to which he replied: "Well, he went across three and one-half lanes of the highway and struck this car owned by Nitschke."

But on cross-examination it clearly appears that he was not quoting Silvia, except as to the skidding, but giving his own deductions. He testified as follows: "Q. You say that Mr. Silvia told you that his car went into a skid on the icy road. Did he say it went over three and one-half lanes or is that your conclusion? A. Well, he said he went into a skid and that is where his car was. Q. In other words, he didn't say he skidded three and one-half lanes? A. No, he didn't say that. Q. And he didn't say which car struck which car? A. No, he didn't say that either."

Again the trial justice stated in his rescript: "The chief also said that the defendant on the night of the accident never claimed that his car was stopped at the time it came in collision with the plaintiff's car." The chief did not so testify. Referring to the defendant's testimony, the trial justice further stated: "His story in court was at odds with his version of how the accident happened given to Chief Capwell shortly after the occurrence." An examination of Chief Capwell's testimony does not support that statement. On the contrary, such testimony tends to support that of the defendant.

We are of the opinion that the trial justice wholly misconceived material evidence, thereby affecting prejudicially his view of the defendant's credibility as a witness. In our judgment, on his erroneous impression of such evidence, he then substituted his own opinion for that of the jury which had likewise heard the evidence, seen the witnesses and rendered its verdict under proper instructions from the court. Where it clearly appears, as in this case, that the trial justice wholly misconceived material evidence, and on the basis of such misconception set aside the jury's verdict, we cannot sustain such ruling. See *Surmeian* v. *Simons*, 42 R. I. 334. From our examination of the conflicting evidence we are unable to say that it strongly preponderates against the verdict. In these circumstances the verdict of the jury should not be disturbed. *Bradley* v. *Brayton*, 61 R. I. 44; *Audette* v. *New England Transportation Co.*, 71 R. I. 420.

The defendant's exceptions to the granting of a new trial in each case are sustained, and each case is remitted to the superior court for the entry of judgment on the verdict.

*Edward L. Godfrey, Frank C. Cambio*, for plaintiffs.

*Boss & Conlan*, for defendant.